UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-357-GWU

LINDA MURPHY, PLAINTIFF,

VS.   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

08-357  Linda Murphy

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

    One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

08-357  Linda Murphy

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-357  Linda Murphy

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Linda Murphy, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia, obesity, being "status post" a thoracic spine compression fracture, degenerative disc disease of the cervical and lumbar spine, degenerative disc disease of both knees, and left acromioclavicular joint arthritis. (Tr. 22). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Murphy retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 29-34).

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff 's age, education and work experience could perform any jobs if she were limited to "light" level exertion with no prolonged standing or walking in excess of two hours without interruption, and also had the following non-exertional restrictions. She: (1) could never crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, crouch, and reach overhead with the left arm; (3) could no more than "frequently" balance, kneel, or climb ramps and stairs; (4) could no more than "frequently" push or pull or use hand controls with the left arm; (5) could not perform continuous or uninterrupted flexion or extension of her head from side to side; (6)

could have no concentrated exposure to full body vibration or use vibratory tools with the left, non-dominant hand; and (7) needed to avoid hazards such as unprotected heights and dangerous machinery. (Tr. 482-3). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 483-4).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mrs. Murphy alleged disability due to a back injury, neck and shoulder pain, arthritis, fibromyalgia, depression, anxiety, and chronic laryngitis. (Tr. 73). The plaintiff submitted an extensive amount of evidence of treatment by specialists in orthopedia and neurology, and numerous x-rays and MRI reports of her neck, back, knees, and shoulder, most of which showed some degree of degenerative change, although, with one exception, none of the degenerated areas required operative intervention. (E.g., Tr. 171-3, 190, 194-7, 215, 274-5, 319, 350, 356-7). The exception was a compression fracture of the T-12 vertebra which occurred after a fall from a horse in September, 2004. (Tr. 224-5). Dr. Harry Lockstadt, an orthopedist, performed a "kyphoplasty" in which bone cement was injected into the fracture on December 17, 2004. (Tr. 208). After initially reporting some improvement, and attempting to return to work, the patient reported that the procedure was ineffective in treating her symptoms. (Tr. 215). She stopped work

completely after June 20, 2005. (Tr. 442). Dr. Lockstadt referred his patient to pain management (Tr. 215), but the physician to whom she was referred recommended facet and sacroiliac joint injections along with oral medications (Tr. 230-1) and Mrs. Murphy later reported to Dr. Lockstadt that she could not face injections due to anxiety attacks (Tr. 319). Other specialists evaluated complaints of knee pain (Tr. 348), shoulder pain (Tr. 356-7), and neck pain (Tr. 364-76) without listing any functional restrictions.

      The ALJ found the plaintiff's fibromyalgia to be a "severe" impairment. She had been treated over a period of several years by a rheumatologist, Dr. Gary R. Margolies. Initially, in 2001, he found only two tender points on examination, but after the plaintiff's alleged onset date in 2005, found eighteen of eighteen possible tender points on three different examinations. (Tr. 251, 253, 321). Dr. Margolies attempted to prescribe different medications and recommended low impact and weight-bearing exercise, but concluded that he had little else to offer her. He did not suggest functional restrictions.

      The plaintiff's treating family physician, Dr. Karen Saylor, repeatedly provided disability assessments stating that Mrs. Murphy was totally disabled, and would have severe restrictions on lifting, carrying, bending, stooping, standing, walking, as well as other activities. (Tr. 246-9, 252, 352, 355). A one-time examining source, Dr. Robert Hoskins, evaluated Mrs. Murphy on September 7, 2005 at the request

of the defendant, but diagnosed chronic back pain, status post compression fracture of T-12 with kyphoplasty, fibromyalgia "per history but not independently verified today," and arthritis in the knees, back, neck, and [sacroiliac] joints "by history." (Tr. 236-7). He noted that "musculoskeletal dysfunctions were identified that clearly impair ambulation, standing, sitting, handling, gross manipulations or traveling." (Tr. 237). He also stated that "musculoskeletal limitations were identified that clearly limit or exclude light carrying, light lifting or some bending, squatting, crawling, climbing or balancing." (Id.).

A state agency physician, Dr. M. Allen Dawson, reviewed the record on October 5, 2005, apparently prior to the receipt of Dr. Hoskins's report and prior to the submission of most of the opinions of Dr. Saylor, and concluded that Mrs. Murphy could perform light level exertion, never climb ladders, ropes, and scaffolds, occasionally stoop, and needed to avoid even moderate exposure to vibration. (Tr. 283-9). He rejected the opinion of Dr. Saylor that the plaintiff was permanently and totally disabled given in an August 4, 2005 letter (Tr. 263) as being an opinion reserved to the Commissioner (Tr. 288). Another state agency physician, Dr. Sudhideb Mukherjee, reviewed the evidence on December 18, 2005 and affirmed Dr. Dawson's report. He briefly noted the examination by Dr. Hoskins, commenting

08-357 Linda Murphy

only that he "could not verify the [positive] fibromyalgia [points]." (Tr. 307).[1] He stated that additional imaging studies submitted since Dr. Dawson's opinion would not have any significant impact on the previous functional capacity assessment. (Tr. 314). As he appeared to question the fibromyalgia diagnosis, it is not clear whether Dr. Mukherjee was implying that there would be no restrictions based on this condition or not.

Thus, the plaintiff has produced opinions from a treating source who says that she is totally disabled, and the defendant's consultative examiner stated that her impairments would "limit or exclude" even "light" carrying and lifting. (Tr. 237). Only state agency sources who did not have access to the entire record and who failed to comment on the restrictions apparently imposed by Dr. Hoskins, which were available to one of them, provided limitations that were consistent with the ALJ's functional capacity assessment.

The ALJ declined to accept Dr. Saylor's opinions. He correctly noted that her statements that Mrs. Murphy was disabled and unable to hold a job were not entitled to controlling weight under the regulations, such as Social Security Ruling (SSR) 96-2p. (Tr. 32). In terms of her specific findings, the ALJ felt that they were

---

[1] As previously noted, Dr. Hoskins says that fibromyalgia was "not independently verified," which is slightly different from saying that it could not be verified. (Tr. 237). He did note cervical and lumbar tenderness, but the plaintiff remained in a hard shell back brace throughout the examination. (Tr. 236).

11

08-357 Linda Murphy

inconsistent with the objective evidence such as MRIs and x-rays, and the lack of limitations in range of motion and findings of normal strength. (Id.). While the ALJ is not required to accept an opinion of even a treating source if it is not supported by objective findings, the Sixth Circuit has cautioned on more than one occasion that "objective tests are of little relevance in determining the existence or severity of fibromyalgia." Rogers v. Commissioner of Social Security, 486 F.3d 234, 243 (6th Cir. 2007), citing Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988). "Fibromyalgia patients manifest normal muscle strength and neurological actions and have a full range of motion." Id. at 244 (citation omitted). Fibromyalgia is diagnosed by (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. Id. The ALJ noted that Dr. Margolies had found eighteen out of eighteen tender points (Tr. 25) and accepted that fibromyalgia was a severe impairment, but apparently did not evaluate her fibromyalgia as the possible cause of restriction, as opposed to her orthopedic complaints.[2] As previously described, the state agency physicians did not appear to do so either. The Rogers court

---

[2]Another physician, Neurologist Warren F. Chumley, subsequently obtained extensive blood testing and apparently normal immunofixation pattern; he also noted that he was ordering a sedimentation rate, apparently to rule out rheumatoid arthritis. (Tr. 369-71).

08-357  Linda Murphy

emphasized the importance of a non-examining source reviewing all of the evidence, citing SSR 96-6p.  Rogers, 486 F.3d at 245, n. 4.

Additionally, even if Dr. Saylor's opinions were to be totally disregarded, that would still leave the report of Dr. Hoskins.  Although Dr. Hoskins is not specific regarding limitations, saying that the plaintiff had limitations that "clearly limit or exclude light carrying [and] light lifting" appears to be facially incompatible with the ALJ's functional capacity finding.  Neither of the reviewers nor the ALJ discuss this issue.

In sum, this is a case in which the evidence clearly needs to be reviewed by a medical expert with access to the entire record.

The plaintiff has also submitted additional evidence to the Appeals Council.  While the new evidence is no part of this court's substantial evidence review, it can be considered along with other new evidence on remand.

The decision will be remanded for further consideration.

This the 30th day of June, 2009.

Signed By:

*G. Wix Unthank* 

**United States Senior Judge**